*855 OPINION OF THE COURT
John G. Ringrose, J.
Petitioner has filed an application seeking to permit the administration of medication by petitioner and staff to respondent, a patient at Central New York Psychiatric Center (hereinafter referred to as CNYPC), over respondent’s objections. Petitioner also requests that such order be for a period concurrent with respondent’s retention at Central New York Psychiatric Center and for a period not to exceed 12 months after respondent is discharged from CNYPC to the care of petitioner’s staff at the correctional facility operated by the Department of Correctional Services (hereinafter referred to as DOCS) to which respondent is subsequently confined. Mental Hygiene Legal Service has moved to dismiss the application in its entirety or, in the alternative, to dismiss the portion of said petition seeking to continue treatment over objection for up to 12 months after respondent’s discharge from CNYPC.
Upon the return date of the proceeding, the court denied the motion to dismiss the proceeding in its entirety as without basis. A Rivers hearing (Rivers v Katz, 67 NY2d 485) was held on May 24, 2002 and it was determined that the application authorizing the involuntary treatment of the respondent would be granted. A continuation of the hearing was held on June 28, 2002 to determine whether the order will follow the respondent.
Respondent has been diagnosed with chronic schizophrenia. He has a history of multiple inpatient admissions to CNYPC after his symptoms reoccurred after refusing medication upon returning to the correctional facility.
Respondent contends that this application should be dismissed on the ground that section 9.60 of the Mental Hygiene Law (Kendra’s Law) provides the exclusive remedy to the petitioner. It is the contention of the respondent that the provisions of Kendra’s Law must be utilized to create an “outpatient” treatment program for inmates of a correctional facility.
Kendra’s Law was enacted to enable mentally ill people to live in the community without the danger of relapse caused by their failure to accept supervision and treatment. To that end, the failure of the patient to comply with the court ordered treatment plan may result in the prompt involuntary admission of the patient. There is no suggestion in the statute or the legislative findings that Kendra’s Law was designed or mandated to be applied to inmates of a correctional facility. It *856 should be noted however that, although Kendra’s Law applies to releasing patients to the community at large, the goals of that statute and this application are similar. Both seek to enable the mentally ill person to resume their normal lives outside of the confines of a psychiatric hospital, either in the community at large or within a correctional facility.
Secondly, respondent contends that this application should be dismissed as violative of his right to due process in that there is no mechanism to periodically review his capacity to refuse involuntary medication during the term of the order. This argument assumes that the patient will no longer be under the continuing supervision of the staff of the Central New York Psychiatric Center.
The assumption that the patient will be released to the general prison population and no longer closely monitored by petitioner’s staff is central to the respondent’s arguments. CNYPC is a 206 bed maximum security inpatient hospital that is charged with the care and treatment of mentally ill prisoners under the supervision of the Office of Mental Health (hereinafter OMH). Petitioner proposes to transfer the respondent to Great Meadow Correctional Facility at which OMH operates 1 of 12 satellite facilities. The satellite facilities are similar to the one operated at Great Meadow which consists of: (1) a residential crisis treatment program — 14 beds to provide observation and treatment to those individuals experiencing acute distress in that correctional facility or in the areas covered by that satellite unit; (2) an intermediate care program — 38 beds for inmates who are unable to currently mainstream with the rest of the general prison population; and (3) outpatient services for individuals living in the general prison population. Approximately 22 to 25 employees of CNYPC work as mental health staff at a typical satellite unit. The satellite units are also accredited by the Joint Commission of Healthcare Organizations. The proposed procedures for continuing orders require immediate notification and consultation with the patient’s physician if the patient refuses to take his or her prescribed medication. Involuntary medication would be administered if necessary after a five-day period of consultation at the direction of a CNYPC physician and by a CNYPC nurse. DOCS employees would be utilized to restrain the patient, if necessary, at the direction of the CNYPC nurse.
This court finds that the proposed procedure by which the patient will be monitored by petitioner’s staff after leaving the psychiatric hospital does not violate the requirements of the *857 Rivers decision. Rivers mandated that the medical judgments as to the administration of antipsychotic drugs be made in accordance with accepted professional judgment, practice and standards. There is no mandate in the Rivers decision that the patient must remain within the walls of the main psychiatric facility at the time this decision is made.
Respondent further contends that the Office of Mental Health and the Department of Correctional Services are necessary parties to this proceeding. In opposition, petitioner points out that the Office of Mental Health is a party to this proceeding as the petitioner is an employee of that agency. With respect to the Department of Correctional Services, petitioner points out that there is no reason to mandate that it must be a party to this proceeding as the proposed role of that agency is very limited.
Respondent contends that the application must be dismissed because rules and regulations concerning this extension of the forced medication order have not been promulgated pursuant to the State Administrative Procedure Act. However, petitioner points out that this statute was enacted to assure uniformity in the promulgation of regulations, not to mandate the enactment of such regulations. Furthermore, the procedures for this type of extended order have been established by agreement between the Office of Mental Health and the Department of Correctional Services.
This court therefore directs that the order permitting the involuntary administration of medication to the respondent shall be for a period concurrent with respondent’s retention at Central New York Psychiatric Center and for a period not to exceed 12 months after respondent is discharged from CNYPC to the care of petitioner’s staff at the appropriate correctional facility.